UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JERAMIAH BROWN,

                          Plaintiff,

v.                                                                5:20-CV-1339
                                                                  (TJM/ML)
7-ELEVEN INCORP.; TIM HORTONS;
and BRAD GOLDSTEIN,

                          Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

JERAMIAH BROWN
  Plaintiff, *Pro Se*
22106 Lane Road
Watertown, New York 13601


MIROSLAV LOVRIC, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

        The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with (1) an application to

proceed *in forma pauperis* (Dkt. No. 2), (2) a motion to appoint counsel (Dkt. No. 3), (3) an

amended complaint (Dkt. No. 6), (4) a motion to obtain ECF login and password (Dkt. No. 7),

and (5) a second amended complaint (Dtk. No. 8), filed by Jeramiah Brown ("Plaintiff") to the

Court for review.  For the reasons discussed below, I (1) grant Plaintiff's *in forma pauperis*

application (Dkt. No. 2), (2) deny his motion for appointment of counsel (Dkt. No. 3), (3) deny

Plaintiff's motion to obtain an ECF login and password (Dkt. No. 7), and (4) recommend that

Plaintiff's Complaint (Dkt. No. 1), Amended Complaint (Dkt. No. 6), and Second Amended

Complaint (Dkt. No. 8) be dismissed in their entirety without leave to amend.

## I.    PROCEDURAL HISTORY

On September 19, 2019, Plaintiff commenced a *pro se* civil rights action in the Northern District of New York, Civil Action No. 5:19-CV-1160 (LEK/ATB) ("*Brown I*") against Tim Hortons and 7-Eleven, alleging that the defendants discriminated against him based on his disability, refused to grant him reasonable accommodations, and constructively terminated him in violation of the Americans with Disabilities Act ("ADA").  (*Brown I*, Dkt. No. 1.)

On October 31, 2019, the defendants filed a stipulation of dismissal signed by the parties. (*Brown I*, Dkt. No. 12.)  The stipulation of dismissal dismissed "all claims by [Plaintiff] in this action against 7-Eleven, Inc., with prejudice."  (*Id.*)  On November 5, 2019, Senior United States District Judge Lawrence E. Kahn entered the stipulation and dismissed *Brown I* with prejudice. (*Brown I*, Dkt. No. 13.)

On April 28, 2020, Plaintiff filed a letter motion (dated April 20, 2020), requesting a Court conference to discuss a breach of the non-disclosure agreement.  (*Brown I*, Dkt. No. 16.) On April 30, 2020, the defendants submitted a letter brief in opposition to Plaintiff's letter motion, which stated that the parties entered into a Confidential Settlement Agreement and General Release dated October 18, 2019 ("Settlement Agreement") to settle all disputes.  (*Brown I*, Dkt. No. 17.)

On April 30, 2020, United States Magistrate Judge Andrew T. Baxter denied Plaintiff's motion for a court conference.  (*Brown I*, Dkt. No. 18.)  Magistrate Judge Baxter's text order stated, *inter alia*, that "this court lacks jurisdiction or authority to enforce any agreement between the parties. . . . Because Judge Kahn's dismissal order did not (1) expressly retain jurisdiction over the settlement or other agreements between the parties, or (2) incorporate the terms of the

settlement or other agreements in the order, the district court does not retain ancillary jurisdiction to enforce such agreements." (*Id*.)

On May 15, 2020, Plaintiff commenced another *pro se* civil rights action in the Northern District of New York, Civil Action No. 5:20-CV-0553 (TJM/ML) ("*Brown II*") against Defendants, alleging that 7-Eleven Incorp and Tim Hortons violated his civil rights by retaliating against him, and that Defendant 7-Eleven breached a non-disclosure clause in the Settlement Agreement. (*Brown II*, Dkt. No. 1.)

On June 18, 2020, I granted Plaintiff's amended IFP application, denied his motion for appointment of counsel, and recommended dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (*Brown II*, Dkt. No. 7.)  With respect to Plaintiff's disability discrimination claims, I found that they were duplicative of the claims that Plaintiff asserted and dismissed with prejudice in *Brown I*. (*Brown II*, Dkt. No. 7 at 8.)  To the extent that Plaintiff asserted claims regarding an alleged breach of a non-disclosure clause, I found that the Court lacked ancillary jurisdiction to enforce the Settlement Agreement. (*Brown II*, Dkt. No. 7 at 8-9.)

On July 17, 2020, Senior United States District Judge Thomas J. McAvoy dismissed Plaintiff's complaint without prejudice to repleading within thirty days of the Court's order. (*Brown II*, Dkt. No. 9.)

Plaintiff did not file an amended complaint in *Brown II*. (*See generally Brown II* docket sheet.)  Instead, on July 22, 2020, Plaintiff filed a letter that stated, "I accept the Report-Recommendation." (*Brown II*, Dkt. No. 11.)

On October 28, 2020, Plaintiff commenced this action by the filing of his *pro se* Complaint ("*Brown III*"). (Dkt. No. 1.)

## II.    BACKGROUND

Construed as liberally[1] as possible, Plaintiff's Complaint alleges that his civil rights were violated by 7-Eleven Incorp and Tim Hortons.  (*See generally* Dkt. No. 1.)  The Complaint is a form complaint pursuant to the ADA and Plaintiff alleged that the conduct complained of in this action involves failure to employ, termination of employment, denial of participation in public service or program, failure to make alterations to accommodate disability, retaliation, and that "7-Eleven played negligence with the justice system knowing that TAR syndrome is covered under the Americans with Disability Act."  (Dkt. No. 1 at 3.)  Plaintiff alleges that on August 24, 2018, he was wrongfully terminated by 7-Eleven Incorp because he went to the hospital for medical concerns.  (*Id*. at 3.)  Plaintiff alleges that the Equal Employment Opportunity Commission ("EEOC") issued him a right to sue letter in September 2019, and he commenced *Brown I*, in October 2019.  (*Id.* at 4.)  Plaintiff alleges that 7-Eleven Incorp and its attorney intimidated him into signing the Settlement Agreement and incorrectly advised him that "his case would be immediately . . . dropped because his case isn't covered under the ADA (American Disability ACT) when in fact it is."  (*Id*.)  Plaintiff also alleges that 7-Eleven Incorp "compromised the Nondisclosure Agreement by sharing [it] with the Tim Hortons . . . Owner, Employees & blacklisting [him] as an employee by adding the Nondisclosure Agreement to a 7-Eleven Incorp computer server."  (*Id.*)

Plaintiff's Complaint also includes an excerpt from the website of the National Conference of State Legislatures regarding types of prohibited discrimination under New York state law.  (*Id*. at 7-9.)

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

As relief, Plaintiff seeks the following: (1) 7-Eleven Incorp remove Plaintiff's "private information from their server referencing to past employment and/or blacklisting him from future employment," (2) a payment of $300,000.00 to the "Uniquely Me Foundation" "to spread awareness for TAR Syndrome," (3) payment of $1,800,000.00 to Plaintiff in damages, and (4) that "this case . . . be reported to the ADA Committee . . . [because it] should be a fine example to the government about Workplace Discrimination, Harassment, & Hostile Workplace." (*Id.* at 6.)

Plaintiff's Amended Complaint[2] is a form complaint alleging breach of contract. (*See generally* Dkt. No. 6.) Plaintiff alleges that he is a citizen of New York state, Defendant 7-Eleven has its principal place of business in New York and Texas, and Defendant Tim Hortons is a citizen of New York state. (*Id.* at 2.) Plaintiff alleges that on October 18, 2019, he entered into the Settlement Agreement with 7-Eleven and Tim Hortons wherein, the parties would keep information confidential but that 7-Eleven and Tim Hortons "uploaded the agreement to their company server" and "leaked information to the 501 Mill Street Tim Hortons employees." (*Id.* at 3.) Plaintiff also alleges that Defendant 7-Eleven "denied [his] disability to be covered under the ADA Act, when in fact it is." (*Id.*) Plaintiff alleges that he sought advice from Legal Aid before entering into the Settlement Agreement but that Legal Aid "refused to serve, service" him and that Defendant 7-Eleven's attorney, Brad Goldstein "intimidated [him] by explaining to him [that] he would not get his job back and his disability wasn't covered under the ADA Act." (*Id.* at 10.)

---

[2]     "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). However, given the special solicitude afforded to *pro se* litigants, the Court has considered all of Plaintiff's pleadings.

Moreover, Plaintiff alleges that United States Magistrate Judge Andrew T. Baxter was "supposed to oversee" the Settlement Agreement and ensure that it did not violate Plaintiff's rights. (*Id*. at 13.) Plaintiff alleges that "[t]here should have been a [s]ettlement [c]onference" but that there none was held. (*Id*.)

Plaintiff alleges that 7-Eleven and Tim Hortons "cannot revoke [j]urisdiction for [him], a [d]isabled [i]ndividual, to file a complaint with the Northern District Court if there is a BREACH OF CONTRACT." (*Id*. at 14.)

Plaintiff asserts the following three claims based on these factual allegations: (1) breach of contract, (2) defamation, and (3) judicial misconduct. (*Id*. at 3.) Plaintiff seeks essentially the same relief as set forth in his Complaint. (*Compare* Dkt. No. 1 at 6, *with* Dkt. No. 6 at 3.)

Plaintiff's Second Amended Complaint[3] is largely a duplication[4] of his Amended Complaint. (*Compare* Dkt. No. 6, *with* Dkt. No. 8.) However, Plaintiff added Brad Goldstein as a defendant.[5] Plaintiff alleges that Defendant Goldstein is a citizen of Virginia. (Dkt. No. 8 at 2.) Plaintiff's Second Amended Complaint discusses at length the alleged details surrounding the execution and notarization of the Settlement Agreement. (*Id*. at 21-22.) Plaintiff alleges that

---

[3]      The Court notes that pursuant to Fed. R. Civ. P. 15(a)(1), "[a] party may amend its pleading once as a matter of course." As a result, to the extent that Plaintiff attempts to amend his complaint again, he may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, given the special solicitude granted to *pro se* litigants, the Court considered Plaintiff's Second Amended Complaint (Dkt. No. 8).

[4]      In fact, paragraph V.A. of the Amended Complaint states that it was signed on November 4, 2020, the same day as Plaintiff's Second Amended Complaint. (*Compare* Dkt. No. 6 at 5, *with* Dkt. No. 8 at 5.) In addition, the last page of Plaintiff's Amended Complaint was signed and dated on November 10, 2020 (Dkt. No. 6 at 20), this page appears to be duplicated in Plaintiff's Second Amended Complaint (Dkt. No. 8 at 20).

[5]      7-Eleven Incorp, Tim Hortons, and Brad Goldstein collectively referred to as "Defendants."

it was "ILLEGAL for [Defendant] Goldstein to make any [c]ontact to [Plaintiff] or [c]ontract for that matter with the [P]laintiff, being born with congenital & physical impairments." (*Id*. at 22.) Further, the Second Amended Complaint alleges that "[i]t is ILLEGAL to COMPENSATE a [d]isabled [i]ndividual due to bringing legal allegations to a District Court." (*Id*. at 23.)

Plaintiff further alleges that he corresponded with non-party Jeremy Campos on facebook, that Mr. Campos was employed by Tim Hortons, and Mr. Campos informed Plaintiff that "former employees from Tim Hortons owned by 7-Eleven Incorp caus[ed] crucial defamation to [Plaintiff]." (*Id*. at 24-25.) Plaintiff alleges that he contacted Defendant Goldstein with the information he obtained from Mr. Campos and that Defendant Goldstein alleged Plaintiff breached the Settlement Agreement in his correspondence with Mr. Campos. (*Id*. at 25.)

Plaintiff asserts the following five causes of action: (1) wrongful termination, (2) defamation, (3) disability discrimination, (4) retaliation, and (5) intimidation to enter into a contract. (*Id*. at 62.) Plaintiff seeks essentially the same relief as set forth in the Complaint and Amended Complaint. (*Compare* Dkt. No. 1 at 6, *with* Dkt. No. 6 at 3, *and* Dkt. No. 8 at 62.)

For a more complete statement of Plaintiff's claims, refer to the Complaint, Amended Complaint, and Second Amended Complaint. (Dkt. Nos. 1, 6, 8.)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## III.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[6]  After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[7]

## IV.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the Complaint fails to allege facts plausibly suggesting subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1988) (holding that subject matter jurisdiction is a "threshold question that must be resolved . . . before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) (citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)) ("[b]efore deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter."); *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*,

---

[6]     The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[7]     Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018) (dismissing on initial review, action challenging state court mortgage foreclosure judgment because the court lacked jurisdiction); *Eckert v. Schroeder, Joseph & Assoc.*, 364 F. Supp. 2d 326, 327 (W.D.N.Y. 2005) (citing *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("[a] court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## V.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A.    Waiver of Claims

The Complaint asserts that the Court has jurisdiction because it is a civil action seeking damages pursuant to the ADA for discrimination based on a disability and the failure to accommodate that disability.  (Dkt. No. 1 at ¶ 1.)  To the extent that Plaintiff attempts to reallege that Defendants wrongfully terminated him, or discriminated or retaliated against him in the context of his employment relationship with Defendants 7-Eleven and Tim Hortons, those claims are duplicative of the claims that Plaintiff asserted and dismissed with prejudice in *Brown I*. (*Brown I*, Dkt. No. 13); *see Smith v. JPMorgan Chase*, 15-CV-0808, 2016 WL 5339548, at *4 (S.D.N.Y. Sept. 23, 2016) (quoting *Morefun Co., Ltd., v. Mario Badescu Skin Care Inc.,* 13-CV-9036, 2014 WL 2560608, at *4 (S.D.N.Y. June 6, 2014)) ("Under New York law, 'a valid release constitutes a complete bar to an action on a claim which is the subject of the release.'"); *see also Curtis v. Citibank, N.A.*, 226 F.3d 133, 136 (2d Cir. 2000) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)) ("As part of the general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.").

"Knowing and voluntary waivers of . . . ADA claims are enforceable."  *Long v. Corning Inc.*, 19-CV-6422, 2020 WL 1467278, at *4 (W.D.N.Y. Mar. 26, 2020) (citing *Fletcher v. Palazzo*, 151 F. App'x 73, 75 (2d Cir. 2005) (Knowing and voluntary waivers of Title VII claims

are enforceable); *Loksen v. Columbia Univ.*, 12-CV-7701, 2013 WL 5549780, at *5-6 (S.D.N.Y.

Oct. 4, 2013) (applying standard waiver of NYSHRL claims and noting "New York law relies on

principles of contract law, a standard that is less stringent than the one that applies . . . under

federal law. . . . Nevertheless, the 'totality of the circumstances' analysis is still relevant [to]

analyzing whether a release is knowingly and voluntarily entered into under New York law.");

*Hsueh v. The Bank of New York*, 05-CV-5345, 2006 WL 2778858, at *3 (S.D.N.Y. Sept. 26,

2006) (ADA claims)).

      The determination of whether a waiver is knowingly and voluntary depends on the

"totality of the circumstances" including the following factors:

> (1) the plaintiff's education and business experience, (2) the amount of
> time the plaintiff had possession of or access to the agreement before
> signing it, (3) the role of plaintiff in deciding the terms of the agreement,
> (4) the clarity of the agreement, (5) whether the plaintiff was represented
> by or consulted with an attorney, and (6) whether the consideration given
> in exchange for the waiver exceeds [any] benefits to which the [plaintiff]
> was already entitled by contract or law.
>
> In addition, courts have considered a seventh factor-whether the employer
> encouraged the employee to consult with an attorney and whether the
> employee had a fair opportunity to do so.

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir. 1998) (citing *Bormann v. AT

& T Commc'ns Inc.*, 875 F.2d 399, 403 (2d Cir. 1989)).  The factors are not exhaustive nor must

all of the factors be satisfied before a release is enforceable.  *Laramee v. Jewish Guild for Blind*,

72 F. Supp. 2d 357, 360 (S.D.N.Y. 1999); *Matusovsky v. Merrill Lynch,* 186 F. Supp. 2d 397,

400 (S.D.N.Y. 2002); *Livingston v. Bev-Pak, Inc.*, 112 F. Supp. 2d 242, 247 (N.D.N.Y. 2000)

(Smith, M.J.); *Pesserillo v. Nat'l Grid*, 78 F. Supp. 3d 551 (E.D.N.Y. 2015).

While Plaintiff does not include the Settlement Agreement as an attachment to his Complaint, Amended Complaint, or Second Amended Complaint, the Court is still able to meaningfully consider most of these factors.

Plaintiff includes several e-mails with Defendant Goldstein, which indicate that Plaintiff was sent the Settlement Agreement on October 18, 2019, and was asked to return a signed version by October 25, 2019.  (Dkt. No. 8 at 27.)  Courts have held that, with regard to the amount of time the plaintiff had possession of or access to the agreement before signing, "even a few hours will suffice."  *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 130 (S.D.N.Y. 2012); *see also Dewey v. PTT Telecom Neth., US, Inc.*, 101 F.3d 1392, 1996 WL 364531, at *3 (2d Cir. July 2, 1996) (holding four days was sufficient to review release); *Shain v. Center for Jewish History,* 04-CV-1762, 2006 WL 3549318, at *4 (S.D.N.Y. Dec. 7, 2006) (holding that "several hours" to review the release was sufficient); *Cordoba v. Beau Dietl & Assocs.,* 02-CV-4951, 2003 WL 22902266, at *5 (S.D.N.Y. Dec. 8, 2003) (holding four days to review release was sufficient).

Plaintiff appears to allege that Defendant Goldstein drafted the Settlement Agreement. (Dkt. No. 8 at 23.)  However, Plaintiff also alleges that he and Defendant Goldstein corresponded "periodically" via telephone to discuss and negotiate the terms of the Settlement Agreement.  (Dkt. No. 8 at 21.)  As a result, it is reasonable to infer that Plaintiff played an active role in deciding the terms of the Settlement Agreement.

Defendant Goldstein's e-mail to Plaintiff dated October 18, 2019, clearly and succinctly sets forth the material terms of the Settlement Agreement, which appear to be in contention. (Dkt. No. 8 at 27); *see Cordoba v. Beau Deity & Assocs.,* 02-CV-4951, 2003 WL 22927874, *5 (S.D.N.Y. Dec. 2, 2003) (holding that a release slightly longer than two pages that specifically

refers to the waived claims is sufficient to weigh in favor of the defendant); *Rozenfeld v. Dep't of Design & Constr.,* 875 F. Supp. 2d 189, 200 (E.D.N.Y. 2012) (holding that a stipulation of less than one and one half pages and seven paragraphs was sufficient to weigh in favor of the defendant); *Sako v. Ohio Dept. of Admin. Serv.,* 06-CV-0728, 2007 WL 1500905, *7 (S.D. Ohio May 21, 2007) (finding that a settlement agreement of slightly over a page that was "clear and concise in its language" was sufficient to weigh in favor of the defendant). More specifically, Defendant Goldstein's e-mail identifies the total amount of damages that Plaintiff would receive under the Settlement Agreement, an itemization according to the specific types of damages, and that the Settlement Agreement included a "no-rehire clause." (Dkt. No. 8 at 27.)

Plaintiff alleges that he sought "help from Legal Aid . . . but Legal Aid refused to serve, service [Plaintiff]." (Dkt. No. 1 at 10.) Plaintiff alleges that because Legal Aid did not assist him, he "could not go to the proper professionals to discuss whether or not the [Settlement Agreement] was legit." (*Id.*) Thus, Plaintiff had a full and fair opportunity to consult with an attorney and attempted to do so. *See Dewey,* 101 F.3d 1392, 1996 WL 364531, at *3 (2d Cir. July 2, 1996) (holding that "although [the plaintiff] did not consult an attorney prior to signing the release, there is nothing to indicate that she did not have the opportunity to do so.")

I find that, the balance of these factors weigh in Defendants' favor, Plaintiff knowingly and voluntarily entered into the Settlement Agreement, and is therefore barred from litigating any discrimination and retaliation claims related to his employment with Defendants 7-Eleven and Tim Hortons.[8]

---

[8] The Court acknowledges that it is unable to consider every factor set forth in *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 438 (2d Cir. 1998), because the Settlement Agreement itself is not before the Court, nor is there any information regarding Plaintiff's level of education. However, the factors are not exhaustive nor must all of the factors be satisfied

Plaintiff also invokes several contract defenses to allege that he did not sign the Settlement Agreement knowingly and voluntarily. More specifically, Plaintiff seems to allege that the Settlement Agreement is invalid because he was subjected to undue influence, economic duress, and lacked the capacity to execute the Settlement Agreement.

"Contracts that are executed under duress, or where a party is incapacitated or acting involuntarily, are, at most, *voidable*, not automatically void." *Cater v. New York*, 17-CV-9032, 2019 WL 430266, at *5 (S.D.N.Y. Feb. 4, 2019) (citing *United States v. Twenty MILJAM-350IED Jammers*, 669 F.3d 78, 89 (2d Cir. 2011)); *see Reid v. IBM Corp.,* 95-CV-1755, 1997 WL 357969, at *6 (S.D.N.Y. June 26, 1997) ("[E]ven if plaintiff had presented facts sufficient to show that he was under undue influence or economic duress, or was incapacitated or intoxicated when he signed the Release, the Release would have been merely voidable, not void, and plaintiff ratified the release by accepting its benefits and failing to tender back the consideration he received in return for it."). "For a contract to be void, a party must 'promptly repudiate the contract' or else 'be deemed to have ratified it.'" *Cater*, 2019 WL 430266, at *5 (citing *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122-23 (2d Cir. 2001); *Farrell v. Title Assocs., Inc.*, 03-CV-4608, 2004 WL 5131862, at *5 (S.D.N.Y. Feb. 20, 2004)). "A settlement agreement is ratified when a party accepts payment thereunder." *Hewett v. Leblang*, 12-CV-1713, 2012 WL 2820274, at *7 (S.D.N.Y. July 5, 2012).

"Findings of duress that permit a party to disown its obligations under a contract . . . are 'reserved for extreme and extraordinary cases.'" *Granger v. Manhattan and Bronx Surface Transit Operating Auth.*, 13-CV-3569, 2014 WL 4054256, at *4 (S.D.N.Y. Aug. 15, 2014)

---

before a release is enforceable. Given the balance of the factors, I find that the Settlement Agreement was entered knowingly and voluntarily.

(quoting *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001)). To void a contract based on duress, a party must show that wrongful conduct "precluded the exercise of [that party's] free will." *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Assoc.*, 655 F.3d 136, 142 (2d Cir. 2011); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 403 (S.D.N.Y. 2017) (citing *McIntosh v. Consol. Edison Co. of New York*, 96-CV-3624, 1999 WL 151102, at *2 (S.D.N.Y. March 19, 1999)). The party seeking to void a settlement agreement on grounds of duress "'shoulders a heavy burden.'" *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 127 (S.D.N.Y. 2012) (quoting *Davis & Assocs., Inc. v. Health Mgmt. Servs., Inc.*, 168 F. Supp. 2d 109, 114 (S.D.N.Y. 2001)), *aff'd*, 556 F. App'x 56 (2d Cir. 2014) (summary order).

### 1.    Undue Influence

Courts recognize three types of duress: duress by physical compulsion, duress by threat, or duress by undue influence. *Gaughan*, 261 F. Supp. 3d at 403; *Culmone-Simeti v. New York City Dep't of Educ.*, 17-CV-2313, 2018 WL 3384437, at *6 (S.D.N.Y. July 11, 2018) (collecting cases).

Undue influence "requires unfair persuasion by a person who, because of his relation to the victim, is justifiably assumed by the victim at the time to be one who will not act in a manner that is inconsistent with the victim's welfare." *Joseph v. Chase Manhattan Bank, N.A.,* 751 F. Supp. 31, 34 (E.D.N.Y.1990) (citing *Restatement (Second) of Contracts* § 177 (1981)).

Plaintiff alleges that Defendant Goldstein, who was representing Defendants 7-Eleven and Tim Hortons in the negotiation of the Settlement Agreement, exerted pressure by cautioning Plaintiff that TAR syndrome was not covered by the ADA. (Dkt. No. 6 at 10; Dkt. No. 8 at 10.)

However, Plaintiff was not justified in assuming that Defendant Goldstein[9] would not act in a manner inconsistent with his welfare, since Defendant Goldstein represented Defendants 7-Eleven and Tim Hortons.  *See Reid*, 1997 WL 357969, at *6 (finding that the plaintiff was not justified in assuming that his managers had his interests at heart where the plaintiff was alleging that his employer discriminated against him and failed to reasonably accommodate his disabilities).

### 2.    Economic Duress

"In order to establish that the release is voidable on the ground of economic duress, plaintiff must show that the agreement was obtained: (1) by means of wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative." *Nicholas v. Nynex, Inc.,* 929 F. Supp. 727, 732 (S.D.N.Y. 1996) (quotations and citations omitted); *accord Frumkin v. Int'l Bus. Machs. Corp.,* 801 F. Supp. 1029, 1044 (S.D.N.Y. 1992); *DuFort v. Aetna Life Ins. Co.,* 818 F. Supp. 578, 581-82 (S.D.N.Y.1993).

The Complaint, Amended Complaint, and Second Amended Complaint do not allege that Plaintiff was ever threatened when signing the Settlement Agreement.  (*See generally* Dkt. No. 1; Dkt. No. 6; Dkt. No. 8.)  Plaintiff's inability to fund his own medical care or other economic strains in his life, do not amount to threats by Defendants sufficient to plausibly allege duress. *Hewett*, 2012 WL 2820274, at *8; *see Farrell*, 2004 WL 5131862, at *6 ("While the Court is

---

[9]    Plaintiff alleges that "[i]t was **ILLEGAL** for [Defendant] Goldstein to make any [c]ontact [with Plaintiff]."  (Dkt. No. 8 at 22.)   The Court notes that Defendant Goldstein corresponding with Plaintiff was neither illegal nor in violation of the New York Rules of Professional Conduct, which permit attorneys "communicating on behalf of a client" to contact "a person who is not represented by counsel."  N.Y. Rules of Prof. Cond. Rule 4.3.

sympathetic to [the plaintiff]'s need to buy groceries and pay rent, that need is legally inadequate to state a claim of duress.").

The Court also notes that Plaintiff's allegations that Defendant Goldstein "responded in intimidation" when Plaintiff provided "a screenshot" of his correspondence with Mr. Campos, are insufficient to plausibly allege economic duress. (Dkt. No. 8 at 25.)

"Under New York law, threats to enforce a party's legal rights under a contract—or even that party's *interpretation* of its rights—cannot constitute a wrongful threat sufficient to establish a claim of economic duress." *Cooper Dev. Co. v. Friedman*, 92-CV-7572, 1994 WL 62846, at *4 (S.D.N.Y. Feb. 22, 1994), *aff'd sub nom. Cooper Dev. v. Friedman*, 43 F.3d 1458 (2d Cir. 1994) (emphasis in original). Moreover, "[a] threatened breach of contract for which there are adequate legal remedies does not constitute duress." *Neuman v. Pike*, 591 F.2d 191, 194 (2d Cir. 1979).

As a result, Defendant Goldstein's letter dated April 21, 2020, which states, *inter alia*, that Defendants "now have reason to believe [Plaintiff has] breached Paragraph 6 of the [Settlement] Agreement by discussing the terms of the Agreement with a person other than [his] professional advisors or immediate family," does not and cannot amount to a threat sufficient to establish a claim of economic duress. (Dkt. No. 8 at 47-48.)

### 3.    Incapacity

"A party's competence to enter into a contract is presumed, and the party asserting incapacity bears the burden of proof." *Er-Loom Realty, LLC v. Prelosh Realty, LLC*, 77 A.D.3d 546, 548 (N.Y. App. Div. 1st Dep't 2010). A party alleging that they lacked the capacity to enter into a binding contract must allege that "any physical or mental condition rendered [him] incompetent to comprehend and understand the nature of the transactions underlying the

agreement." *Er-Loom Realty, LLC*, 77 A.D.3d at 548 (citing *Whitehead v. Town House Equities, Ltd.*, 8 A.D.3d 367, 369 (N.Y. App. Div. 2d Dep't 2004)).  A party may also lack capacity if, due to his illness, "he was unable to control his conduct."  *Smith v. Comas*, 173 A.D.2d 535, 535 (N.Y. App. Div. 2d Dep't 1991).  However, Plaintiff's bare allegations that he was "under [a] mental condition" and was "born with congenital & physical impairments" are insufficient to allege a prima facie case that he was unable to understand the Settlement Agreement or the nature of the agreement.  (Dkt. No. 6 at 10; Dkt. No. 8 at 10.)

### 4.     Ratification

Even if Plaintiff's naked claims were sufficient to plausibly suggest that he had been subjected to undue influence, economic duress, or was incapacitated when he signed the Settlement Agreement, he would still not prevail because he ratified the Settlement Agreement by accepting its benefits—$17,000—and failing to return those funds.  (*See generally* Dkt. No. 1; Dkt. No. 6; Dkt. No. 8.); *see Cater*, 2019 WL 430266, at *5 (quoting *Hewett*, 2012 WL 2820274 at *7; citing *Cheung v. N.Y. Palace Hotel*, 03-CV-0091, 2005 WL 2387573, at *12 (E.D.N.Y. Sept. 28, 2005) (dismissing discrimination claims where the plaintiff failed to tender back consideration before initiating a lawsuit seeking rescission of separation agreement); *Reid v. IBM Corp.*, 95-CV-1755, 1997 WL 357969, at *16 (S.D.N.Y. June 26, 1997) ("failure to tender back the [$28,000] consideration before suing, amounted to a knowing and voluntary ratification.")) ("Plaintiff cannot have it both ways; []he cannot 'retain the benefit of [his] bargain while circumventing [his] own obligations thereunder.'").

As a result, I recommend that Plaintiff's claims subject to the Settlement Agreement be dismissed.[10]

### B.     Breach of Contract Claim

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agric., Inc. v. Perry*, 12-CV-6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust,* 09-CV-7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013)).   Federal courts are mandated to examine their own jurisdiction *sua sponte* at every stage of the litigation.  *ACCD Global Agric., Inc*., 2013 WL 840706, at *1; *see In re Tronox, Inc.*, 855 F.3d 84, 85 (2d Cir. 2017) (federal courts have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*).

> A federal court exercises limited jurisdiction pursuant to Article III of the Constitution.  It has subject matter jurisdiction over claims in which: (1) there is a 'federal question' in that a colorable claim arises under the 'Constitution, laws or treaties of the United States,' 28 U.S.C. § 1331; and/or if (2) there is complete "diversity of citizenship" between each plaintiff and all defendants and a minimum of $75,000 in controversy, 28 U.S.C. § 1332.

---

[10]     The Court notes that, to the extent Plaintiff asserts any claims against Defendant Goldstein pursuant to the ADA, I recommend that those claims be dismissed with prejudice. *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)) ("[I]ndividuals cannot be held liable under the ADA."), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA.").

*Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 511-12 (D. Conn. 2015) (quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction) (footnote omitted)), *reconsideration denied*, 14-CV-0053, 2015 WL 2124365 (D. Conn. May 6, 2015).

Plaintiff alleges that Defendants breached the non-disclosure clause of the Settlement Agreement entered in *Brown I.* (Dkt. No. 1 at 4; Dkt. No. 6 at 3, 11, 15; Dkt. No. 8 at 3, 11, 15, 24-25, 62.) Enforcement of "a settlement agreement is fundamentally 'a claim for breach of contract, part of the consideration of which was dismissal of an earlier federal suit,' and therefore 'requires its own basis for jurisdiction.'" *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 & 381 (1994). As set forth in Magistrate Judge Baxter's order dated April 30, 2020, this Court did not retain ancillary jurisdiction over the enforcement of the parties' Settlement Agreement in *Brown I.* (*Brown I*, Dkt. No. 18.) "When a district court lacks ancillary jurisdiction over the enforcement of the settlement agreement, 'enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.'" *Hendrickson*, 791 F.3d at 362 (quoting *Kokkonen*, 511 U.S. at 382)).

Plaintiff's Amended Complaint (Dkt. No. 6 at 2) and Second Amended Complaint (Dkt. No. 8 at 2) allege that the Court has jurisdiction over Plaintiff's breach of contract claim due to diversity of citizenship.

Diversity jurisdiction exists where the parties are citizens of different states and the amount in controversy exceeds $75,000. *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir.2009). "'[C]itizens of different States' means that there must be complete diversity, i.e., that each

plaintiff's citizenship must be different from the citizenship of each defendant." *Hallingby*, 574 F.3d at 56.

Plaintiff alleges that he is a resident of New York State (Dkt. No. 6 at 1; Dkt. No. 8 at 1) and that at least one Defendant is a resident of New York State (Dkt. No. 6 at 2, 4; Dkt. No. 8 at 2, 4). Thus, Plaintiff does not allege facts plausibly suggesting diversity of citizenship.

In addition, re-negotiation or modification of the Settlement Agreement is governed by general principles of contract law, and thus does not present a federal question pursuant to 28 U.S.C. § 1331.

As a result, I recommend dismissal of Plaintiff's breach of contract claims for lack of jurisdiction.

### C.    Defamation

As set forth above in Part V.B. of this Order and Report-Recommendation, this Court lacks jurisdiction pursuant to 28 U.S.C. § 1332. Defamation is a New York state common-law tort, governed by state law, which, as alleged, does not raise any federal question. *Zheng v. General Elec. Co.*, 15-CV-1232, 2015 WL 7421961, at *3 (N.D.N.Y. Oct. 26, 2015) (Hummel, M.J.) ("[a] claim for defamation against non-governmental [actors] arises under New York State common law."); *Mosley v. McIntosh*, 08-CV-9635, 2009 WL 1542546, at *3 (S.D.N.Y. May 29, 2009) (quoting *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004)) ("'Defamation . . . is an issue of state law, not federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action.'"). As a result, I recommend dismissal of Plaintiff's claim for defamation because this Court lacks subject matter jurisdiction.

### D.    Judicial Misconduct

"[N]o judicial approval is required to settle a non-class ADA action, the parties are free to

settle their case on whatever terms are satisfactory to them, so long as it is the parties' own

decision to do so."  *Massi v. 198 Chelsea Corp.*, 217 F. Supp. 3d 731, 733 (S.D.N.Y. 2016); *see*

*also Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (citing Fed. R. Civ. P. 41(a)(1)(A)) ("In

ordinary, non-class litigation, parties are free to settle their disputes on their own terms, and

plaintiffs may voluntarily dismiss their claims without a court order.").  In addition, it is not

required that the court hold any judicially-supervised settlement conference before executing a

stipulation of dismissal.  *Massi*, 217 F. Supp. 3d at 732.

The Court also notes that Plaintiff has not brought any action against Magistrate Judge

Baxter, who Plaintiff alleges, "was supposed to oversee [the Settlement Agreement] and [en]sure

it doesn't violate [Plaintiff]'s [c]onstitutional [r]ights."  (Dkt. No. 6 at 13; Dkt. No. 8 at 13.)

However, to the extent that Plaintiff's Complaint, Amended Complaint, or Second Amended

Complaint are construed as alleging claims against Magistrate Judge Baxter or Judge Kahn, who

were the assigned judges in *Brown I*, I recommend that those claims be dismissed based on the

doctrine of judicial immunity.

It is well settled that officials acting in a judicial capacity are entitled to absolute

immunity, and this immunity acts as a complete shield to claims for money damages. *Montero v.*

*Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see also Mireles v. Waco*, 502 U.S. 9, 9-10 (1991)

(citations omitted) ("A long line of this Court's precedents acknowledges that, generally, a judge

is immune from a suit for money damages. Although unfairness and injustice to a litigant may

result on occasion, 'it is a general principle of the highest importance to the proper

administration of justice that a judicial officer, in exercising authority vested in him, shall be free

23

to act upon his own convictions, without apprehension of personal consequences to himself."); *Mahapatra v. Comstock*, 97-CV-7129, 1998 WL 88054, at \*1 (2d Cir. Feb. 26, 1998) ("[T]he district court properly dismissed the claims for damages based on absolute immunity. Judges are shielded from liability for civil damages for judicial acts performed in their judicial capacities."). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

The Complaint, Amended Complaint, and Second Amended Complaint are devoid of facts plausibly suggesting that Magistrate Judge Baxter or Judge Kahn acted in the clear absence of all jurisdiction.  As a result, I recommend that those claims be dismissed with prejudice and without leave to amend.  *See Wellington v. Foland*, 19-CV-0615, 2019 WL 3315181, at \*11 (N.D.N.Y. July 24, 2019) (Lovric, M.J.) (recommending dismissal with prejudice and without leave to amend, claims against a village court judge based on the doctrine of absolute immunity), *report and recommendation adopted*, 2019 WL 6485157 (N.D.N.Y. Dec. 3, 2019) (Suddaby, C.J.); *Brooks v. Ukieley,* 14-CV-6662, 2015 WL 235406, at \*4 (E.D.N.Y. Jan. 16, 2015) (dismissing the plaintiff's claims in their entirety with prejudice against Judges Ukieley and Toomey based on the doctrine of judicial immunity); *Gonzalez v. Sharpe,* 06-CV-1023, 2006 WL 2591065, at \*3 (N.D.N.Y. Sept. 8, 2006) (Scullin, J.) (dismissing without leave to amend, the plaintiff's claims against U.S. District Court Judge Gary L. Sharpe based on the doctrine of judicial immunity).

## VI.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint

gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[11]

In this instance, I conclude that any amendments to Plaintiff's Complaint, Amended Complaint, and/or Second Amended Complaint, would be futile. As set forth above in Part I of this Order and Report-Recommendation, Plaintiff has brought three separate actions—*Brown I*, *Brown II*, and *Brown III*—asserting substantially the same allegations. In addition, as set forth above in Part II of this Order and Report-Recommendation, Plaintiff has already twice amended his Complaint here. (*Compare* Dkt. 1, *with* Dkt. No. 6, *and* Dkt. No. 8.) As a result, I recommend that Plaintiff's Complaint, Amended Complaint, and Second Amended Complaint be dismissed without leave to amend. *See Official Comm. of Unsecured Creditors of Color Tile,*

---

[11]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

*Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 168 (2d Cir. 2003) (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998)) (finding that the "District Court did not abuse its discretion in denying [the plaintiff] leave to amend the complaint because there was a 'repeated failure to cure deficiencies by amendments previously allowed.'"); *Salinger v. Projectavision, Inc.*, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) ("Three bites at the apple is enough.").

## VII.   PLAINTIFF'S MOTION TO APPOINT COUNSEL

Plaintiff has also submitted a request for appointment of counsel.  (Dkt. No. 3.)  The application indicates that Plaintiff has been unsuccessful in his efforts to obtain counsel on his own from the private sector.  (*Id.*)

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case."  *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted).  Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be carefully considered by the court in ruling upon such a motion.  As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance.  A motion for appointment of counsel may be properly denied if the court concludes that the plaintiff's "chances of success are highly dubious."  *Leftridge*, 640 F.3d at 69.  If the court finds that the claims have substance, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)).  This is not to say that all, or indeed any, of these factors are controlling in a particular case.  Rather, each case must be decided on its own facts.  *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

In the present matter, the Court has recommended dismissal of the action.  As such, the Court cannot find that Plaintiff's claims are likely to be of substance.  Plaintiff's motion (Dkt. No. 3) is therefore denied.

## VIII.   PLAINTIFF'S MOTION TO OBTAIN ECF LOGIN AND PASSWORD

In light of the recommended disposition of this case, Plaintiff's motion for ECF login and password is denied.  "Because this court is recommending dismissal at this time, the court will deny [P]laintiff's motion to obtain ECF privileges without prejudice."  *Amato v. McGinty*, 17-CV-0593, 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017) (Baxter, M.J.), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017) (D'Agostino, J.); *see Mahmood v. United States Gov't*, 20-CV-0207, 2020 WL 3965125, at *3 (N.D.N.Y. Mar. 17, 2020) (Stewart, M.J.) (same), *report and recommendation adopted*, 2020 WL 1808206 (N.D.N.Y. Apr. 9, 2020) (D'Agostino, J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion to obtain an ECF login and password (Dkt. No. 7) is **DENIED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1), Amended Complaint (Dkt. No. 6), and Second Amended Complaint (Dkt. No. 8) for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and because the Court lacks subject matter jurisdiction.

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[12]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

It is hereby respectfully **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[13]

Dated: December 15, 2020
        Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[12]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

[13]     The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).